11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Wendy
A. Allen

Appellant

Vs.                   No.  11-04-00067-CV -- Appeal from Erath County

John P.
Mancini, Jr.

Appellee

 

Wendy A. Allen and John P. Mancini, Jr. are the
parents of L.M.M.  Allen and Mancini
divorced in 1997.  At that time, Allen
and Mancini were named joint managing conservators of L.M.M.  The trial court ordered that Allen would have
the right to establish the primary residence of the child.  In August 2003, Mancini filed a petition to
modify the parent-child relationship seeking to be appointed the managing
conservator with the right to establish the primary residence of L.M.M.  The trial court entered an order in which it
removed Allen as the managing conservator with the exclusive right to establish
the primary residence of L.M.M. and appointed Mancini as the managing
conservator with the exclusive right to establish the primary residence of the
child.  We affirm.

In her first issue on appeal, Allen argues that
the evidence does not support the trial court=s
finding of material and substantial change in circumstance. An assertion that
the evidence is Ainsufficient@ to support a fact finding means that
the evidence supporting the finding is so weak or the evidence to the contrary
is so overwhelming that the finding should be set aside and a new trial
ordered.  Garza v. Alviar, 395
S.W.2d 821, 823 (Tex.1965).  We are
required to consider all of the evidence in making this determination.  Maritime Overseas Corporation v. Ellis,
971 S.W.2d 402, 406‑07 (Tex.), cert. den=d,
525 U.S. 1017 (1998).








The best interest of the child shall always be the
primary consideration of the court in determining conservatorship and possession.  TEX. FAM. CODE ANN. '
153.002 (Vernon 2002). A court may modify the terms and conditions of a joint
managing conservatorship if the modification would be in the best interest of
the child and if the circumstances of the child or of one or both of the
conservators have materially and substantially changed since the rendition of
the order.  TEX. FAM. CODE ANN. ' 156.101(1) (Vernon Supp. 2004 -2005)[1].  The trial court is given wide latitude in
determining custody issues.  Peña v.
Peña, 8 S.W.3d 639 (Tex.1999).  A
trial court=s order
modifying a joint managing conservatorship will not be disturbed on appeal
unless the complaining party can show a clear abuse of discretion.  Gillespie v. Gillespie, 644 S.W.2d
449, 451 (Tex.1982).  The test for abuse
of discretion is whether the trial court acted in an arbitrary and unreasonable
manner or whether it acted without reference to any guiding principles.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 242 (Tex.1985), cert. den=d,
476 U.S. 1159 (1986). 

  Courts may
use the non-exhaustive list of the factors set out in Holley v. Adams,
544 S.W.2d 367, 371‑72 (Tex.1976), to determine the child=s best interest.  In re Doe 2, 19 S.W.3d 278, 282 n.20
(Tex.2000)(recognizing that intermediate courts employ the Holley
factors to ascertain best interest in conservatorship cases); In re Z.B.P.,
109 S.W.3d 772, 778 (Tex.App. ‑ Fort Worth 2003, no pet=n). 
Those factors include but are not limited to (1) the desires of the
child; (2) the emotional and physical needs of the child now and in the future;
(3) the emotional and physical danger to the child now and in the future; (4)
the parental abilities of the individuals seeking custody; (5) the programs
available to assist these individuals to promote the best interest of the
child; (6) the plans for the child by these individuals or by the agency
seeking custody; (7) the stability of the home or proposed placement; (8) the
acts or omissions of the parent which may indicate that the existing parent‑child
relationship is not a proper one; and (9) any excuse for the acts or omissions
of the parent. Holley v. Adams, supra.  

We note that the record contains neither findings
of fact nor conclusions of law.  Thus, it
is implied that the trial court made all necessary findings of fact to support
its judgment.   Thompson v. Thompson,
827 S.W.2d 563, 567 (Tex.App. - Corpus Christi 1992, writ den=d); In Interest of A.D.H., 979
S.W.2d 445, 448 (Tex.App. ‑ Beaumont 1998, no pet=n).  








Mancini testified at the hearing that he has lived
in Alabama since 1997.  He had limited
visitation with L.M.M. between 1997 until 2002 because Allen would not allow
him to visit.  In July 2002, Mancini and
Allen entered into an agreement concerning visitation.  The trial court entered an agreed order in
accordance with the agreement.  The
record shows that, at that time, Allen and L.M.M. were living in Wyoming with
Allen=s
boyfriend.  In April 2003, Allen and
L.M.M. moved to Farmington, New Mexico, where they lived with a male friend of
Allen.  Mancini had an extended
visitation with L.M.M. in the summer of 2003. 
During that time, Allen moved to Dublin, Texas.  

Mancini testified that, while L.M.M. was with him
during the summer of 2003, Allen interfered with his relationship with L.M.M.
Allen called L.M.M. every day; and she would frequently tell L.M.M. that
Mancini did not love her, that Mancini stole money and was going to jail, and
that she should not call Mancini ADad.@ 
Allen also told L.M.M. that Mancini had Akidnapped@ L.M.M. 
During the summer visitation, Allen became angry that Mancini let L.M.M.
go swimming even though she had an ankle injury.   Allen called the police and reported the
incident. 

 Mancini
also testified that, after the extended summer visitation in 2003, Allen made
visitation difficult.  After Mancini
had  visited with L.M.M. in October 2003,  Allen reported to Child Protective Services
that Mancini had abused and neglected L.M.M. 
Child Protective Services conducted an investigation and ruled out the
allegations of abuse and neglect. 
Mancini believed that Allen=s
actions have hurt his relationship with L.M.M. 

Allen testified at the hearing that, during the
2003 summer visitation, Mancini  agreed
to call on July 4 to determine if L.M.M. would stay the rest of the
summer.  Mancini did not call on July 4
to extend the visitation.  During the
visitation, Allen did not speak frequently with L.M.M.; but,  when she did speak with her, L.M.M. indicated
that she was not having a good time with Mancini.  Allen denied telling L.M.M. that her father
did not love her and that he had stolen money. 
Allen acknowledged that she had reported to Child Protective Services
that Mancini abused and neglected L.M.M. 









We find that the trial court did not err in
finding that a material and substantial change had occurred since the rendition
of the last order and that modification would be in the best interest of L.M.M.[2]  The record shows that L.M.M. had three
different residences from 2002 until the time of the hearing and that she had
attended three different schools.  Prior
to 2002, L.M.M. had limited visitation with Mancini.  Since that time, Mancini has had frequent and
extended visitation with L.M.M., and he has tried to maintain a strong
relationship with her.  As we have
earlier set forth, the record contains evidence that Allen had interfered with
the relationship between Mancini and L.M.M. 
The evidence supporting the finding of the trial court that a material
and substantial change had occurred since the date of the last hearing is not
so weak nor is the evidence to the contrary so overwhelming that the trial
court=s order
should be set aside.  Allen=s first issue on appeal is overruled.

In her second issue on appeal, Allen contends that
Athe evidence does not support the court=s finding of alienation and/or
interference with the child and father relationship.@  In its order modifying the parent-child
relationship, the trial court stated in its Afindings@ that:

The Court finds that the material allegations in
the petition to modify are true, there is a substantial and material change in
circumstances and that the requested modification is in the best interest of
the child.  The Court further finds that
[Allen] has made extreme attempts to alienate [Mancini] from the child and has
caused substantial interference in the relationship between [Mancini] and the
child. 

 

The trial court found that there was a material
and substantial change and that modification was in the best interest of L.M.M.
as required by Section 156.101(1).  A
part of the evidence before the trial court related to Allen=s interference with the relationship
between Mancini and L.M.M.  We will not
review that evidence again here because we have set it out in our discussion of
Allen=s first
issue on appeal.  That evidence is not so
weak, nor is there any evidence to the contrary that is so overwhelming, that
the trial court=s order
should be set aside.  Allen=s second issue on appeal is overruled.

            In her third issue on appeal, Allen complains that the
trial court erred when it admitted a tape recording into evidence. We review a
trial court=s
decision to admit or exclude evidence for an abuse of discretion.  E.I. du Pont de Nemours and Company v.
Robinson, 923 S.W.2d 549, 558 (Tex.1995). 
We will reverse the decision of the trial court only if it acted
arbitrarily, unreasonably, or without reference to any guiding rules or
principles. Downer v. Aquamarine Operators, Inc., supra at 241‑42.








The tape recording contains conversations that
Mancini taped between L.M.M. and Allen. 
The tape recording also contains messages left by Allen on Mancini=s answering machine, and it also
contains conversations between Mancini and Allen.  Allen contends that, under the Astate wiretap law,@ the recordings were Aillegally obtained@ and, therefore, not admissible.  

Allen cites Collins v. Collins, 904 S.W.2d
792 (Tex.App. - Houston [1st Dist.] 1995), writ den=d, 923 S.W.2d 569 (Tex.1996), as
authority.  In Collins, the child=s father recorded conversations between
the child and his mother.  The father
offered the tape recording into evidence to impeach the mother=s testimony.  The trial court admitted the tape recording
into evidence.  On appeal, the court
stated that the Astate
wiretap statute makes it illegal to tape a conversation >without
the consent= of the
person being recorded.@  Collins v. Collins, supra at 798.  

In Collins, the court relied upon TEX. CIV.
PRAC. & REM. CODE ANN.  ch. 123
(Vernon 2005).  Section 123.001 contains
various definitions applicable to Chapter 123. 
Section 123.002 creates a cause of action against a person who violates
Chapter 123.  Section 123.003 creates
certain defenses not applicable here. 
Section 123.004 provides for an injunction against one who violates
Chapter 123.  It also provides for
damages and attorney=s
fees.  There are no other provisions in
Chapter 123. 

Chapter 123 basically addresses interception of
communications.  Section 123.001 contains
the following definition:

(2) AInterception@ means the aural acquisition of the
contents of a communication through the use of an electronic, mechanical, or
other device that is made without the consent of a party to the
communication, but does not include the ordinary use of:

 

(A) a telephone or telegraph instrument or
facility or telephone and telegraph equipment;

 

(B) a hearing aid designed to correct subnormal
hearing to not better than normal;

 

(C) a radio, television, or other wireless
receiver; or

 

(D) a cable system that relays a public wireless
broadcast from a common antenna to a receiver. 
(Emphasis added)

 








We decline to follow Collins because we are
of the opinion that Chapter 123 does not address the admissibility of a
tape-recorded conversation at trial and because we believe that, when a party
to the communication consents to the interception of the communication, there
is no violation of Chapter 123, assuming that it does apply.  

Chapter 123 provides a cause of action for a
person whose communications have been wrongfully obtained; it does not address
the admissibility of that evidence absent an injunction prohibiting the
divulgence or use of information obtained by an Ainterception.@ 
See Section 123.004(1).

There is another reason why we believe that the
tape recording was admissible even if Chapter 123 is applicable.  Section 123.001(2) provides that an Ainterception@
occurs when a communication is  acquired
without the consent of Aa
party.@  The tape recording was made with the consent
of Mancini who was a party to some of the conversations on the tape.  Seymour v. Gillespie, 608 S.W.2d 897
(Tex.1980); Kotrla v. Kotrla, 718 S.W.2d 853 (Tex.App. - Corpus Christi
1986, writ ref=d
n.r.e.).  Mancini also served as joint
managing conservator of L.M.M. at the time 
the conversations were recorded between L.M.M. and Allen.  As managing conservator, Mancini had the
authority to consent to medical, dental, surgical, psychiatric, and
psychological treatment and also to marriage or enlistment in the armed forces
of the United States.  We find that
Mancini also had the authority to consent on behalf of L.M.M. to the tape
recording of conversations between L.M.M. and Allen.  

Further, even if Chapter 123 is applicable to the
admissibility of the tape recording in this case, Allen would have to show that
an Ainterception@
occurred.  By definition, in order to
show that an interception occurred, Allen first would have to show that the
tape recording was made without the consent of a party to the
communication.  Sections 123.001(2) &
123.002.  Allen did not meet that burden
at trial. 








Allen makes the same arguments regarding the
federal wiretap laws as she does the state wiretap laws.  Federal wiretap laws are covered by 18 U.S.C.
'' 2510-2521.  Section 2511(2)(d) provides that, if a person
is not acting under color of law, it is not unlawful to intercept a
communication if one of the parties to the communication has given prior
consent to the recording of the communication and the interception is not for
the purpose of committing a criminal or tortious act in violation of federal or
state constitutions or laws.  Although
not all federal courts agree that the federal wiretap laws apply to family law
cases and although there are not many cases touching upon the subject, it has
been held that a parent may vicariously consent to the tape-recording of a
minor child as long as the parent Ahas
a good faith, objectively reasonable basis for believing that it is necessary
and in the best interest of the child to consent on behalf of his or her minor
child to the@ tape
recording. Pollock v. Pollock, 154 F.3d 601, 610 (6th Cir. 1998)(citing Campbell
v. Price, 2 F. Supp. 2d 1186 (E.D. Ark. 1998); Thompson v. Dulaney,
838 F. Supp. 1535 (D. Utah 1993). We hold that, even if the federal wiretap
laws are applicable here, Mancini was entitled to consent to the tape
recording, both for himself and for L.M.M. as her joint managing conservator,
under the criteria set forth in Pollock. 
Because there was consent to the tape recording, federal wiretap laws
did not prohibit the introduction of the tape recording in this case. 

For all of the above reasons, we hold that the
trial court did not abuse its discretion when it admitted the tape
recording.  Allen=s
third issue on appeal is overruled.

The judgment of the trial court is affirmed.

 

JIM R. WRIGHT

JUSTICE

 

June 30, 2005

Panel
consists of: Arnot, C.J., and

Wright,
J., and McCall, J.                                                                                                         











[1]Mancini filed his petition to modify the parent-child
relationship on August 1, 2003.  Section
156.101(1) was amended effective September 1, 2003.  The changes to Section 156.101(1) apply to an
action to modify an order in a suit affecting the parent-child relationship
pending on the effective date of the Act or filed on or after that date.





[2]The July 2002 agreed order did not modify
conservatorship.  Therefore, the order
Mancini sought to modify was the 1997 order which named Allen as the managing
conservator with the right to establish the residence of L.M.M., and it is from
the date of that order that we consider the change in circumstances.  TEX. FAM. CODE ANN. ' 156.101 (Vernon Supp. 2004 - 2005).